United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 02-60005

_____

MARY TRAVIS, Individually, as Administratrix of the
Estate of Michael Travis, Deceased,

Plaintiff-Appellant,

VERSUS

ARTHUR IRBY, ILLINOIS CENTRAL RAILROAD COMPANY,
and JOHN DOES, 1-10,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi

**ON PETITION FOR REHEARING**

(Opinion January 17, 2003, 5th Cir. 2003, ____F.3d___)

Before DAVIS and BARKSDALE, Circuit Judges, and AFRICK[1], District Judge.

W. EUGENE DAVIS, Circuit Judge:

We deny the Defendants' motion for rehearing.

In response to their petition for panel rehearing, we substitute the following opinion in place

of the opinion as originally issued:

_____

[1]District Judge of the Eastern District of Louisiana, sitting by designation.

Plaintiff Mary Travis appeals the district court's denial of her Motion to Remand after the defendants removed this case from the Circuit Court of Holmes County, Mississippi, and the district court's dismissal of her claims on summary judgment. Based on our finding that the non-diverse defendant, Arthur Irby, was not fraudulently joined, we vacate and remand.

I.

Michael Travis was killed on May 16, 1997, when his car was struck by a train at the Mileston railroad crossing on Epps Road in Holmes County, Mississippi. Illinois Central Railroad Company ("Illinois Central") owned the train and engineer Arthur Irby operated the train at the time of the fatal accident.

Plaintiff originally filed this action in the Circuit Court of Holmes County against Illinois Central, Irby and John Does 1 through 10, identified only as agents, servants, employees or representatives of Illinois Central. Plaintiff Mary Travis is an adult resident of Madison County, Mississippi, and is the natural mother of Michael Travis, deceased. Defendant Illinois Central is an Illinois corporation registered to do business in the State of Mississippi. Defendant Irby is an adult resident of Leake County, Mississippi.

In her First Amended Complaint filed on December 9, 1997, plaintiff alleged that the defendants, collectively, were negligent for

> failing to make a proper and timely application of the brakes of the train, failing to keep a proper and reasonable lookout, failing to properly train the crew of the train, failing to adopt and enforce adequate policies and procedures relating to train operating under similar circumstances, failing to take proper precautions under the circumstances existing, failing to properly mark, warn of, and restrict access to its crossing under dangerous circumstances, and under circumstances where Defendants knew or should have known that such crossing was unreasonably dangerous, and any such other acts or omissions of negligence which will be shown at a trial of this matter.

2

Discovery did not proceed smoothly in state court. After considerable procedural wrangling and a Motion to Compel, on September 25, 1998, the plaintiff supplemented answers to certain interrogatories. The defendants, contending that those responses established that Defendant Irby was fraudulently joined, removed the action to federal court on October 2, 1998. The district court agreed, dismissed Defendant Irby and the John Doe defendants, and denied a Motion to Remand.

After additional discovery, the defendants filed a Motion for Summary Judgment seeking dismissal of plaintiff's remaining claims against Illinois Central. The district court granted this motion on March 16, 2001, dismissing the case. Plaintiff timely appealed.

## II.

The decisive issue in this case is whether the district court erred in denying plaintiff's Motion to Remand based on fraudulent joinder of Defendant Irby.[2] Fraudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Griggs v. State Farm Lloyds, 181 F.3d 694, 698 (5th Cir. 1999). The defendants do not dispute that Irby is a Mississippi resident. Accordingly, we focus on the second test.

Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion. For example, the Griggs opinion states,

---

[2] Plaintiffs also allege that the Notice of Removal was not timely based on both the one-year time limit and the 30-day time limit in 28 U.S.C. § 1446. Because we find that the Defendants were not entitled to removal on a theory of fraudulent joinder, we need not decide whether their Notice of Removal was timely under either schedule. Given this conclusion, we also need not address whether the district court properly disregarded the citizenship of unnamed wrongful death beneficiaries in its jurisdictional analysis.

> To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.

181 F.3d at 699 (emphasis added; citing Burden v. General Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995) and Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995)). The Griggs opinion later restates that test as follows -

> Stated differently, we must determine whether there is *any reasonable basis* for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court.

181 F.3d at 699 (emphasis added; again citing Burden, and Cavallini.) Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate ... the *absence of any possibility* that the opposing party has stated a claim under state law". 16 Moore's Federal Practice §107.14[2][c][iv][A] (emphasis added). It then comments: "[T]he ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved." Id. (emphasis added.) Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

Older cases have also used other phrases, but appear to apply the same analysis. *E.g.,* Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968)("no fraudulent joinder unless it be clear that there can be no recovery under the law of the state"); Parks v. New York Times Co., 308 F.2d 474, 476 (5th Cir. 1962) (no fraudulent joinder if "probable case in law" (citing Dudley v. Community Public Service Co., 108 F.2d 119, 123 (5th Cir. 1939)). An examination of earlier cases reveals that the insertion of "absolutely no" into the possibility test is fairly recent. It was first

4

used in Green v. Amerada Hess with no indication that any change in the law was indicated. 707 F.2d

201, 205 (5th Cir. 1983). Cases prior to that time stated the test using "reasonable basis" language

without requiring a showing of "absolutely no possibility" of recovery.

> [T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law.

Bobby Jones Garden Apartments, 391 F.2d at 176-177 (5th Cir. 1968). Before Green, our court had

phrased the standard in terms of "no possibility". *E.g.,* B., Inc. v. Miller Brewing Co., 663 F.2d 545,

549 (5th Cir. 1981) ("the removing party must show ... there is *no possibility* that the plaintiff would

be able to establish a cause of action"(emphasis added)); Parks, 308 F.2d at 477 ("there must be some

*reasonable basis* for believing that there is joint liability. The joinder is fraudulent if its clear that ...

the facts asserted ... *could not possibly* create ... liability..." (emphasis added)).

Any argument that a gap exists between the "no possibility" and "reasonable basis" of

recovery language was recently narrowed, if not closed. Badon v. R J R Nabisco, Inc. held:

> Plaintiffs appear to argue that *any mere theoretical possibility* of recovery under local law – no matter how remote or fanciful– suffices to preclude removal. We reject this contention. As cited authorities reflect, there must at least be arguably a *reasonable basis* for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder.

236 F.3d 282, 286 n.4 (5th Cir. 2000) (first emphasis in original). Great Plains Trust Co. v. Morgan

Stanley Dean Witter & Co. confirmed this point:

> [T]he court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, however, must be reasonable,* not merely

5

theoretical.

313 F.3d 305, 312 (5th Cir. 2002)(emphasis added; internal citation and quotations omitted; citing Badon).

Our cases have also noted the similarity of the test for fraudulent joinder and the test for a Rule 12(b)(6) motion alleging failure to state a claim. For instance, Great Plains Trust states that the Rule 12(b)(6) standard is: "[T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under *any set of facts or any possible theory* that he could prove consistent with the allegations in the complaint". Id. at 313 (emphasis added; citing Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). It states the fraudulent joinder standard as: "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned." Id. at 312. (emphasis added; citing Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir. 1990)). The above-stated fraudulent joinder standard is, of course, consistent with our precedent: whether there is a "possibility that [plaintiff] has set forth a valid cause of action." Green, 707 F.2d at 205; Burden, 60 F.3d at 217. This language appears adopted from the Rule 12(b)(6) standard under which "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a *valid claim for relief*". Great Plains Trust, 313 F.3d at 312 (emphasis added; citing Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001)). See *also* Keating v. Shell Chemical Co., 610 F.2d 328 (5th Cir. 1980).

Of course, although the fraudulent joinder and Rule 12(b)(6) standards appear similar, the scope of the inquiry is different. For Rule 12(b)(6) motions, a district court may only consider the allegations in the complaint and any attachments. *E.g.,* Great Plains Trust, 313 F.3d at 313. For

fraudulent joinder, the district court may, as it did in this case, "pierce the pleadings" and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. Carriere, 893 F.2d at 100; Griggs, 181 F.3d at 699-702. Any contested issues of fact and any ambiguities of state law must be resolved in Travis's favor. Griggs, 181 F.3d at 699. The burden of persuasion on those who claim fraudulent joinder is a heavy one. B, Inc., 663 F.2d at 549.

As all parties acknowledge, Travis clearly stated a claim against Irby. Under Mississippi law, Irby owed a duty to exercise reasonable care to avoid injuring Michael Travis at the railroad crossing. New Orleans & N.R. Co. v. Lewis, 214 Miss. 163, 58 So. 2d 486, 490 (1952). Irby can be held personally responsible for negligent acts committed within the scope of his employment for Illinois Central. Harrison v. Illinois C. R. Co., 219 Miss. 401, 69 So. 2d 218, 222 (1954). Plaintiff Travis alleges facts in her complaint attributable to defendant Irby that constitute negligence, including failing to make a proper and timely application of the brakes of the train, failing to keep a proper and reasonable lookout, and failing to take proper precautions under the circumstances existing at the time of the accident.

The bases for the defendants' opposition to the Motion to Remand were the responses Travis made in her Second Supplemental Response to interrogatories posed by the defendants. One of the interrogatories read:

> You have alleged in paragraph 12 of the Complaint that Engineer Irby "failed to keep a proper and reasonable lookout." With respect to this allegation, please state:
> a.      List all facts indicating that Irby failed to keep a proper and reasonable lookout and state the name and address of all witnesses having discoverable knowledge supporting your answer.

Plaintiff's supplemental response was as follows:

7

Plaintiff does not possess the facts supporting said allegations at this time nor has a determination been made as to who may be called to provide expert witness testimony, at such time a determination is made, Plaintiff will promptly supplement this request in accordance with M.R.C.P.

A similar response was made in answer to an interrogatory regarding plaintiff's allegation of failure to take proper precautions under the circumstances. Also, in response to an interrogatory regarding plaintiff's allegations that defendant failed to brake timely, the plaintiff responded that she did not know the location of the locomotive when the brakes were applied. The district court found that "[w]hile Plaintiff clearly seeks the chance to engage in further discovery, she has failed to present any evidence in support of a claim against Defendant Irby. She fails to provide even cursory evidence which gives the Court reason to believe that there is a potential that Irby may be found liable." This led the district court to find that Irby was fraudulently joined. The court therefore denied the Motion to Remand.

We conclude that the district court relied too heavily on the interrogatory responses noted above without considering them in the context of the entire record, the status of discovery, and without resolving all ambiguities in Travis' favor. The district court agreed with the defendant that Travis's second supplemental interrogatory responses should be treated as admissions that she had no factual basis or evidence in support of her claims against Defendant Irby. We disagree with that conclusion. Travis's supplemental answers did not withdraw her earlier responses. Plaintiff responded earlier that expert testimony was required to fully respond and provided lists of eyewitnesses from whose testimony the plaintiff expected to establish facts to support her allegations against Irby. The defendants did not point to any evidence that would negate Irby's fault as alleged in the complaint. Under these circumstances, the defendants have not negated the possibility that Irby

8

could be held liable to Travis on the claims alleged.

Also, a review of the events leading up to those responses reveals that they were made at defendants' suggestion to account for the gaps in discovery at the time the interrogatory responses were due. After considerable discussion between the attorneys about discovery, defendants filed a Motion to Compel on the ground that plaintiff's interrogatory responses were inadequate. The transcript of the hearing on that motion reflects that the plaintiff informed the court that she could not answer many questions because of the status of discovery at the time. The defendants had been successful in avoiding depositions of Irby and other railroad representatives, claiming that until they received satisfactory and fully responsive answers to their interrogatories, depositions were inappropriate. Also, the parties had not deposed witnesses to the accident or developed expert testimony necessary to establish appropriate railroad safety procedures and any breaches thereof. The defendants argued that plaintiff could answer their interrogatories by responding that they "don't know at this time . . . but our investigation is continuing." The defendants argued that these answers could then be supplemented when experts were retained and as information was received. As to one interrogatory, the defendant's counsel stated that "If he doesn't know, it's not going to throw him out of Court to say, in response to the interrogatory, 'We do not know at thi s time of any such violations.' He could then easily supplement if his expert comes back and they want to claim some violations in the future." Plaintiff's supplemental responses to the interrogatories relied on by the district court appear to be directly responsive to those comments. Placed in context, they should not form the basis for barring remand to the plaintiff's chosen forum.

It is also clear from the record, as the district court acknowledged, that discovery was continuing. The district court acknowledged that both sides had engaged in dilatory tactics and found

9

that "neither Plaintiff nor Defendants have presented any substantive evidence regarding Defendant Irby. Defendants merely point to Plaintiff's lack of evidence, while Plaintiff apparently clings to the need for further discovery." In this circumstance, in which the defendant has the burden of establishing fraudulent joinder and the plaintiff can clearly state a claim upon which relief can be granted as to the non-diverse defendant, the lack of substantive evidence as to the non-diverse defendant does not support a conclusion that he was fraudulently joined. In order to establish that Irby was fraudulently joined, the defendant must put forward evidence that would negate a possibility of liability on the part of Irby.[3] As the defendants cannot do so, simply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient to show that there is no possibility for Travis to establish Irby's liability at trial.

Under these circumstances, the district court erred in concluding that Travis had no possibility of establishing Irby's liability for negligence because Illinois Central failed to meet its burden of establishing that the non-diverse defendant was fraudulently joined. Accordingly, the Motion to Remand should have been granted.

### III.

For reasons stated above, we vacate the district court's judgment and remand this case to the district court with instructions to remand this case to the Circuit Court of Holmes County, Mississippi.

VACATED and REMANDED.

---

[3] The case cited by the district court in support of his conclusion, Woods v. Amtrak, 982 F. Supp. 409, 412 (N.D. Miss. 1997), was decided on a motion for summary judgment. On a motion for summary judgment, the plaintiff's lack of evidence in support of her claims, after a sufficient period of discovery, could have a different effect.